**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

**'08 CIV 4218**

|  |  |
|---|---|
| DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, | : |
| DUNKIN' DONUTS FRANCHISING LLC, | : |
| BASKIN-ROBBINS FRANCHISED SHOPS LLC | : |
| DD IP HOLDER LLC, | : |
| BR IP HOLDER LLC and | : |
| DB REAL ESTATE ASSETS I LLC, | : |
|  | : |
| Plaintiffs, | : |
|  | : Case No. 08-CV- |
| v. | : |
|  | : |
| GANPATI DONUTS, INC., | : |
| SHREE RAM DONUTS, INC., | : |
| LAXMI DONUTS, INC., | : |
| KRISHNA DONUTS, INC., | : |
| GIATRI DONUTS INC., | : |
| SHREEJI DONUTS, INC., | : |
| AMISH PATEL and | : |
| AMI PATEL, | : |
|  | : |
| Defendants. | : |

-----------------------------------------------------------X

## COMPLAINT

Plaintiffs DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, DUNKIN'

DONUTS FRANCHISING LLC, BASKIN-ROBBINS FRANCHISED SHOPS LLC, DD IP

HOLDER LLC, BR IP HOLDER LLC and DB REAL ESTATE ASSETS I LLC, by their

attorneys, O'ROURKE & DEGEN, PLLC, as and for their complaint, allege as follows:

## INTRODUCTION

1.      Plaintiffs Dunkin' Donuts Franchised Restaurants LLC, Dunkin' Donuts

Franchising LLC and Baskin-Robbins Franchised Shops LLC are the franchisors of Dunkin'

Donuts or Baskin-Robbins franchises and the licensees of the Dunkin' Donuts or Baskin-Robbins

trademarks.  Plaintiffs DD IP Holder LLC and BR IP Holder LLC are the holders of the Dunkin'

Donuts or Baskin-Robbins trademarks.  Plaintiff DB Real Estate Assets I LLC is the lessor of

some of the locations of Dunkin' Donuts and Baskin-Robbins franchises.

2.      Defendants are the owners and operators of one combination Dunkin' Donuts and Baskin-Robbins restaurant and five Dunkin' Donuts shops located in the Southern District of New York.

3.      Plaintiffs terminated Defendants' Franchise Agreements and Lease based upon their failure to submit sales reports and cure defaults in payments.

4.      Defendants continue to use the names, trademarks and service marks of "Dunkin' Donuts" and "Baskin-Robbins" without authorization to do so, have not removed the signs and other indicia that the sites were Dunkin' Donuts and Baskin-Robbins shops, and occupy the premises leased from DB Real Estate Assets I LLC, even though the lease has been terminated.

## THE PARTIES

5.      Plaintiff DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, successor in interest to Dunkin' Donuts Incorporated, is a foreign limited liability company, duly organized and existing by virtue of the laws of the State of Delaware, with its principal place of business in Canton, Massachusetts, and authorized to do business in the State of New York.

6.      Plaintiff DUNKIN' DONUTS FRANCHISING LLC is a foreign limited liability company, duly organized and existing by virtue of the laws of the State of Delaware, with its principal place of business in Canton, Massachusetts, and authorized to do business in the State of New York.

7.      Plaintiff BASKIN-ROBBINS FRANCHISED SHOPS LLC, successor in interest to Baskin-Robbins USA, Co., is a foreign limited liability company, duly organized and existing by virtue of the laws of the State of Delaware, with its principal place of business in Canton, Massachusetts, and authorized to do business in the State of New York.

8.      Plaintiff DD IP HOLDER LLC is a foreign limited liability company, duly organized and existing by virtue of the laws of the State of Delaware, with its principal place of business in Canton, Massachusetts.

9.      Plaintiff BR IP HOLDER LLC is a foreign limited liability company, duly

2

organized and existing by virtue of the laws of the State of Delaware, with its principal place of business in Canton, Massachusetts.

10.    Plaintiff DB REAL ESTATE ASSETS I LLC ("DB Realty"), successor in interest to Third Dunkin' Donuts Realty, Inc., is a foreign limited liability company, duly organized and existing by virtue of the laws of the State of Delaware, with its principal place of business in Canton, Massachusetts, and authorized to do business in the State of New York.

11.    Upon information and belief, Defendant GANPATI DONUTS, INC. is a domestic corporation, duly organized and existing by virtue of the laws of the State of New York, with a place of business in the County of Orange, State of New York.

12.    Upon information and belief, Defendant SHREE RAM DONUTS, INC. is a domestic corporation, duly organized and existing by virtue of the laws of the State of New York, with a place of business in the County of Orange, State of New York.

13.    Upon information and belief, Defendant LAXMI DONUTS, INC. is a domestic corporation, duly organized and existing by virtue of the laws of the State of New York, with a place of business in the County of Orange, State of New York.

14.    Upon information and belief, Defendant KRISHNA DONUTS, INC. is a domestic corporation, duly organized and existing by virtue of the laws of the State of New York, with a place of business in the County of Orange, State of New York.

15.    Upon information and belief, Defendant GIATRI DONUTS INC. is a domestic corporation, duly organized and existing by virtue of the laws of the State of New York, with a place of business in the County of Orange, State of New York.

16.    Upon information and belief, Defendant SHREEJI DONUTS, INC. is a domestic corporation, duly organized and existing by virtue of the laws of the State of New York, with a place of business in the County of Orange, State of New York.

17.    Upon information and belief, Defendant AMISH PATEL is a resident of the County of Orange, State of New York.

3

18.    Upon information and belief, Defendant AMI PATEL is a resident of the County of Orange, State of New York.

## JURISDICTION AND VENUE

19.    This Court has jurisdiction over this action pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121, and 28 U.S.C. §§ 1331, 1332, 1338 & 1367(A). The amount in controversy exceeds $75,000, exclusive of interest and costs.

20.    Venue in the Southern District of New York is based upon 28 U.S.C. § 1391(b).

## DUNKIN' TRADEMARKS, SERVICE MARKS AND PROPRIETARY MARKS

21.    DD IP Holder LLC owns the trademark, service mark and trade name "Dunkin' Donuts," which is registered on the Principal Register of the United States Patent Office, to identify for the public the source of goods and services marketed under its name, as well as related marks.

22.    Dunkin' Donuts Franchised Restaurants LLC and Dunkin' Donuts Franchising LLC (collectively and individually "Dunkin' Donuts") have the license to use and to license others to use the Dunkin' Donuts marks and trade name and since approximately 1950 they and their predecessors in interest have used them continuously to identify their doughnut shops and the doughnuts, pastries, coffee and other products associated with those shops.

23.    DD IP Holder LLC owns numerous federal registrations for the mark Dunkin' Donuts and related marks.  Among these registrations are Registration Nos. 2,748,147, 1,148,165 and 1,159,354. Each of these registrations is in full force and effect and is incontestable pursuant to 15 U.S.C. § 1065.

24.    The Dunkin' Donuts trademarks and trade name are distinctive and famous and have acquired secondary meaning.

25.    The Dunkin' Donuts trademarks and trade name are utilized in interstate commerce.

26.    The Dunkin' Donuts marks have been widely advertised and promoted by Dunkin'

4

Donuts over the years. Over the past 35 years Dunkin' Donuts and its franchisees spent more than $1,500,000,000 on advertising and promoting the Dunkin Donuts marks. Dunkin' Donuts spent approximately $167,000,000 in fiscal year 2005 alone on advertising and promotion.

27.    Dunkin' Donuts and its franchisees currently operate approximately 5,600 units in the United States and 2,000 outside the United States. Dunkin' Donuts shops feature Dunkin' Donuts distinctive trade dress, including pink and orange color scheme, signage, menu boards, product selection and names, interior design and doughnut cases. In the more than fifty years since the Dunkin' Donuts System began, hundreds of millions of customers have been served in Dunkin' Donuts shops.

28.    As a result of the extensive sales, advertising and promotion of items identified by the Dunkin' Donuts marks, the public has come to know and recognize the Dunkin' Donuts marks, and to associate them exclusively with the products and services offered by Dunkin' Donuts and its franchisees. The Dunkin' Donuts marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Dunkin' Donuts and DD IP Holder LLC, representing and embodying Dunkin' Donuts' considerable goodwill and favorable reputation.

## BASKIN-ROBBINS TRADEMARKS, SERVICE MARKS AND PROPRIETARY MARKS

29.    BR IP Holder LLC owns the trademark, service mark and trade name "Baskin-Robbins," which is registered on the Principal Register of the United States Patent Office, to identify for the public the source of goods and services marketed under its name, as well as related marks.

30.    Baskin-Robbins Franchised Shops LLC ("Baskin-Robbins") has the license to use and to license others to use the Baskin-Robbins marks and trade name and since approximately 1947 it and its predecessors in interest have used them continuously to identify its ice cream stores and the ice cream and other products associated with those stores.

31.    BR IP Holder LLC owns numerous federal registrations for the mark Baskin-

Robbins and related marks. Among these registrations are Registration Nos. 3,124,983, 3,124,982 and 3,035,845. Each of these registrations is in full force and effect and is incontestable pursuant to 15 U.S.C. § 1065.

32.    The Baskin-Robbins trademarks and trade name are distinctive and famous and have acquired secondary meaning.

33.    The Baskin-Robbins trademarks and trade name are utilized in interstate commerce.

34.    The Baskin-Robbins marks have been widely advertised and promoted by Baskin-Robbins over the years. As a result, the Baskin-Robbins marks have become famous throughout the United States.

35.    Baskin-Robbins and its franchisees currently operate approximately 2,500 stores in the United States and approximately 3,000 stores outside of the United States. In the more than fifty-five years since the Baskin-Robbins System began, millions of consumers have been served in Baskin-Robbins stores.

36.    As a result of the extensive sales, advertising and promotion of items identified by the Baskin-Robbins marks, the public has come to know and recognize the Baskin-Robbins marks, and to associate them exclusively with the products and services offered by Baskin-Robbins and its franchisees. The Baskin-Robbins marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Baskin-Robbins, representing and embodying Baskin-Robbins' considerable goodwill and favorable reputation.

## THE FRANCHISE AGREEMENTS

37.    On May 14, 2001, Dunkin' Donuts Incorporated, predecessor in interest of Dunkin' Donuts Franchised Restaurants LLC, Baskin-Robbins USA, Co., predecessor in interest of Baskin-Robbins Franchised Restaurants LLC, and Defendant Ganpati Donuts, Inc. entered into a Franchise Agreement (collectively with any amendments the "Broadway Franchise

Agreement").

38.     The Broadway Franchise Agreement authorized Defendant to operate a restaurant utilizing the Dunkin' Donuts and Baskin-Robbins Systems at 674 Broadway, Newburgh, New York (the "Broadway Premises").

39.     On November 8, 2004, Dunkin' Donuts Incorporated, predecessor in interest of Dunkin' Donuts Franchised Restaurants LLC, and Defendant Shree Ram Donuts, Inc. entered into a Franchise Agreement (collectively with any amendments the "North Plank Road Franchise Agreement").

40.     The North Plank Road Franchise Agreement authorized Defendant to operate a restaurant utilizing the Dunkin' Donuts System at 201 North Plank Road, Newburgh, New York (the "North Plank Road Premises").

41.     On November 8, 2004, Dunkin' Donuts Incorporated, predecessor in interest of Dunkin' Donuts Franchised Restaurants LLC, and Defendant Laxmi Donuts, Inc. entered into a Franchise Agreement (collectively with any amendments the "Vails Gate Franchise Agreement").

42.     The Vails Gate Franchise Agreement authorized Defendant to operate a restaurant utilizing the Dunkin' Donuts System at 1002 Route 94, Vails Gate, New York (the "Vails Gate Premises").

43.     On November 8, 2004, Dunkin' Donuts Incorporated, predecessor in interest of Dunkin' Donuts Franchised Restaurants LLC, and Defendant Krishna Donuts, Inc. entered into a Franchise Agreement (collectively with any amendments the "Highland Falls Franchise Agreement").

44.     The Highland Falls Franchise Agreement authorized Defendant to operate a restaurant utilizing the Dunkin' Donuts System at 184 Main Street, Highland Falls, New York (the "Highland Falls Premises").

45.     On September 14, 1998, Dunkin' Donuts Incorporated, predecessor in interest of Dunkin' Donuts Franchised Restaurants LLC, and Defendant Giatri Donuts Inc. entered into a

Franchise Agreement (collectively with any amendments the "Cornwall Franchise Agreement").

46.    The Cornwall Franchise Agreement authorized Defendant to operate a restaurant utilizing the Dunkin' Donuts System at 45 Quaker Avenue, Cornwall, New York (the "Cornwall Premises").

47.    On May 17, 2007, Dunkin' Donuts Franchising LLC and Defendant Shreeji Donuts, Inc. entered into a Franchise Agreement (collectively with any amendments the "South Robinson Avenue Franchise Agreement").

48.    The South Robinson Avenue Franchise Agreement authorized Defendant to operate a restaurant utilizing the Dunkin' Donuts System at 122-126 South Robinson Avenue, Newburgh, New York (the "Cornwall Premises").

## THE BROADWAY LEASE

49.    On May 14, 2001, Third Dunkin' Donuts Realty, Inc., predecessor in interest of DB Real Estate Assets I LLC, and Ganpati Donuts, Inc. entered into a Lease (collectively with any amendments the "Broadway Lease").

50.    The Broadway Lease authorized Defendant to occupy the Broadway Premises.

## THE GUARANTEES

51.    At the time that the Broadway Franchise Agreement, North Plank Road Franchise Agreement, Vails Gate Franchise Agreement, Highland Falls Franchise Agreement, Cornwall Franchise Agreement and South Robinson Avenue Franchise Agreement (collectively the "Franchise Agreements") and the Broadway Lease were executed, Amish Patel and Ami Patel signed personal guarantees (the "Guarantees") by which they unconditionally guaranteed to Dunkin' Donuts, Baskin-Robbins and DB Realty that Defendants will fully and promptly pay and discharge all their present and future obligations to Dunkin' Donuts, Baskin-Robbins and DB Realty under these agreements.

## THE CROSS-GUARANTEES

52.    The Franchise Agreements provide that each Franchisee is jointly and severally

8

liable for the monetary obligations under any other Franchise Agreement with a common partner, member or shareholder (the "Cross Guarantees").

53.    Upon information and belief, at all times mentioned herein Defendants Amish Patel and Ami Patel were shareholders and officers of all six corporate Defendants.

<u>**THE DEFAULT NOTICES**</u>

54.    On April 1, 2008, pursuant to the Broadway Franchise Agreement and the Broadway Lease, Dunkin' Donuts, Baskin-Robbins and DB Realty sent Defendant Ganpati Donuts, Inc. a Notice to Cure (the "Broadway Notice to Cure") by overnight carrier to the Broadway Premises and to Amish Patel and Ami Patel at 266 Main Street, Cornwall, New York 12518, and by first class mail to the Broadway Premises.

55.    The Broadway Notice to Cure demanded that Defendant cure defaults in paying franchise fees, advertising fees, rent, percentage rent, taxes and other charges.

56.    Upon information and belief, on April 2, 2008, Defendant received the Broadway Notice to Cure.

57.    More than fifteen (15) days passed after Defendant received the Broadway Notice to Cure without the defaults having been cured.

58.    On April 1, 2008, pursuant to the North Plank Road Franchise Agreement, Dunkin' Donuts sent Defendant Shree Ram Donuts, Inc. a Notice to Cure (the "North Plank Road Notice to Cure") by overnight carrier to the North Plank Road Premises and to Amish Patel and Ami Patel at 266 Main Street, Cornwall, New York 12518.

59.    The North Plank Road Notice to Cure demanded that Defendant cure defaults in paying franchise fees, advertising fees and other charges.

60.    Upon information and belief, on April 2, 2008, Defendant received the North Plank Road Notice to Cure.

61.    More than fifteen (15) days passed after Defendant received the North Plank Road Notice to Cure without the defaults having been cured.

9

62.     On April 1, 2008, pursuant to the Vails Gate Franchise Agreement, Dunkin' Donuts sent Defendant Laxmi Donuts, Inc. a Notice to Cure (the "Vails Gate Notice to Cure") by overnight carrier to the Vails Gate Premises and to Amish Patel and Ami Patel at 266 Main Street, Cornwall, New York 12518.

63.     The Vails Gate Notice to Cure demanded that Defendant cure defaults in paying franchise fees, advertising fees and other charges.

64.     Upon information and belief, on April 2, 2008, Defendant received the Vails Gate Notice to Cure.

65.     More than fifteen (15) days passed after Defendant received the Vails Gate Notice to Cure without the defaults having been cured.

66.     On April 1, 2008, pursuant to the Highland Falls Franchise Agreement, Dunkin' Donuts sent Defendant Krishna Donuts, Inc. a Notice to Cure (the "Highland Falls Notice to Cure") by overnight carrier to the Highland Falls Premises and to Amish Patel and Ami Patel at 266 Main Street, Cornwall, New York 12518.

67.     The Highland Falls Notice to Cure demanded that Defendant cure defaults in paying franchise fees, advertising fees and other charges.

68.     Upon information and belief, on April 2, 2008, Defendant received the Highland Falls Notice to Cure.

69.     More than fifteen (15) days passed after Defendant received the Highland Falls Notice to Cure without the defaults having been cured.

70.     On April 1, 2008, pursuant to the Cornwall Franchise Agreement, Dunkin' Donuts sent Defendant Giatri Donuts Inc. a Notice to Cure (the "Cornwall Notice to Cure") by overnight carrier to the Cornwall Premises and to Amish Patel and Ami Patel at 266 Main Street, Cornwall, New York 12518.

71.     The Cornwall Notice to Cure demanded that Defendant cure defaults in paying franchise fees, advertising fees and other charges.

10

72.    Upon information and belief, on April 2, 2008, Defendant received the Cornwall Notice to Cure.

73.    More than fifteen (15) days passed after Defendant received the Cornwall Notice to Cure without the defaults having been cured.

74.    On April 1, 2008, pursuant to the South Robinson Avenue Franchise Agreement, Dunkin' Donuts sent Defendant Shreeji Donuts, Inc. a Notice to Cure (the "South Robinson Avenue Notice to Cure") by overnight carrier to the South Robinson Avenue Premises and to Amish Patel and Ami Patel at 266 Main Street, Cornwall, New York 12518.

75.    The South Robinson Avenue Notice to Cure demanded that Defendant cure defaults in paying franchise fees, advertising fees and other charges.

76.    Upon information and belief, on April 2, 2008, Defendant received the South Robinson Avenue Notice to Cure.

77.    More than fifteen (15) days passed after Defendant received the South Robinson Avenue Notice to Cure without the defaults having been cured.

### TERMINATION OF FRANCHISE AGREEMENTS AND BROADWAY LEASE

78.    On April 28, 2008, pursuant to the Broadway Franchise Agreement and the Broadway Lease, Dunkin' Donuts, Baskin-Robbins and DB Realty sent Defendant Ganpati Donuts, Inc. a Notice of Termination (the "Broadway Notice of Termination") by overnight carrier to the Broadway Premises and to Amish Patel and Ami Patel at 266 Main Street, Cornwall, New York 12518, and by first class mail to the Broadway Premises.

79.    Upon information and belief, on or about April 29, 2008, Defendant received the Broadway Notice of Termination.

80.    The Broadway Notice of Termination terminated the Broadway Franchise Agreement and the Broadway Lease, effective immediately, based upon the failure to cure the defaults listed in the Broadway Notice to Cure.

81.    On April 28, 2008, pursuant to the North Plank Road Franchise Agreement,

11

Dunkin' Donuts sent Defendant Shree Ram Donuts, Inc. a Notice of Termination (the "North Plank Road Notice of Termination") by overnight carrier to the North Plank Road Premises and to Amish Patel and Ami Patel at 266 Main Street, Cornwall, New York 12518.

82.    Upon information and belief, on or about April 29, 2008, Defendant received the North Plank Road Notice of Termination.

83.    The North Plank Road Notice of Termination terminated the North Plank Road Franchise Agreement, effective immediately, based upon the failure to cure the defaults listed in the North Plank Road Notice to Cure.

84.    On April 28, 2008, pursuant to the Vails Gate Franchise Agreement, Dunkin' Donuts sent Defendant Laxmi Donuts, Inc. a Notice of Termination (the "Vails Gate Notice of Termination") by overnight carrier to the Vails Gate Premises and to Amish Patel and Ami Patel at 266 Main Street, Cornwall, New York 12518.

85.    Upon information and belief, on or about April 29, 2008, Defendant received the Vails Gate Notice of Termination.

86.    The Vails Gate Notice of Termination terminated the Vails Gate Franchise Agreement, effective immediately, based upon the failure to cure the defaults listed in the Vails Gate Notice to Cure.

87.    On April 28, 2008, pursuant to the Highland Falls Franchise Agreement, Dunkin' Donuts sent Defendant Krishna Donuts, Inc. a Notice of Termination (the "Highland Falls Notice of Termination") by overnight carrier to the Highland Falls Premises and to Amish Patel and Ami Patel at 266 Main Street, Cornwall, New York 12518.

88.    Upon information and belief, on or about April 29, 2008, Defendant received the Highland Falls Notice of Termination.

89.    The Highland Falls Notice of Termination terminated the Highland Falls Franchise Agreement, effective immediately, based upon the failure to cure the defaults listed in the Highland Falls Notice to Cure.

90.    On April 28, 2008, pursuant to the Cornwall Franchise Agreement, Dunkin' Donuts sent Defendant Giatri Donuts Inc. a Notice of Termination (the "Cornwall Notice of Termination") by overnight carrier to the Cornwall Premises and to Amish Patel and Ami Patel at 266 Main Street, Cornwall, New York 12518.

91.    Upon information and belief, on or about April 29, 2008, Defendant received the Cornwall Notice of Termination.

92.    The Cornwall Notice of Termination terminated the Cornwall Franchise Agreement, effective immediately, based upon the failure to cure the defaults listed in the Cornwall Notice to Cure.

93.    On April 28, 2008, pursuant to the South Robinson Avenue Franchise Agreement, Dunkin' Donuts sent Defendant Shreeji Donuts, Inc. a Notice of Termination (the "South Robinson Avenue Notice of Termination") by overnight carrier to the South Robinson Avenue Premises and to Amish Patel and Ami Patel at 266 Main Street, Cornwall, New York 12518.

94.    Upon information and belief, on or about April 29, 2008, Defendant received the South Robinson Avenue Notice of Termination.

95.    The South Robinson Avenue Notice of Termination terminated the South Robinson Avenue Franchise Agreement, effective immediately, based upon the failure to cure the defaults listed in the South Robinson Avenue Notice to Cure.

**PERTINENT PROVISIONS OF THE AGREEMENTS**

96.    Pursuant to paragraph 1.1 of the Broadway Franchise Agreement:

The term of this Agreement shall expire without notice upon any earlier expiration or termination of a Lease, foreclosure of a mortgage, or other event which has the effect of termination FRANCHISEE's possession and occupancy of the Unit.

97.    Paragraph 1.7 of the Broadway Lease states that the Permitted Use of the Broadway Premises is for the operation of a Dunkin' Donuts/Baskin-Robbins combo shop.

98.    Paragraph 8 of the Broadway Lease states that Ganpati Donuts, Inc. may use the Broadway Premises only for the Permitted Use and for no other purpose.

13

99.    Pursuant to paragraph 14(a) of the Broadway Lease, Ganpati Donuts, Inc. warrants that the Broadway Franchise Agreement is in full force and effect and that the Broadway Lease is subject to the Broadway Franchise Agreement remaining in full force and effect and that if the Broadway Franchise Agreement is terminated for any reason, then DB Realty shall have the right to terminate the Broadway Lease.

## OBLIGATIONS FOLLOWING TERMINATION OF THE FRANCHISE AGREEMENTS

100.    In Section 7 of the Franchise Agreements Defendants agreed that they would not do or perform, directly or indirectly, any act injurious or prejudicial to the goodwill associated with Plaintiffs' proprietary marks and the Dunkin' Donuts and Baskin-Robbins Systems.

101.    In Section 7 of the Franchise Agreements also contain acknowledgments and agreements by Defendants concerning the use of Plaintiffs' proprietary marks or any methods associated with the names "Dunkin' Donuts" and "Baskin-Robbins" after the Franchise Agreements have been terminated.

102.    Under Section 7 of the Franchise Agreements Defendants agreed that following their termination, they would not use the names or proprietary marks of Dunkin' Donuts and Baskin-Robbins.

## OBLIGATIONS TO PAY PLAINTIFFS' ATTORNEY'S FEES AND COSTS

103.    The Franchise Agreements further provide that if they are terminated by reason of the failure of Defendants to cure a default, following notice, then Defendants shall pay all damages, costs and expenses, including attorney's fees, incurred by Plaintiffs as a result thereof.

104.    Defendants agreed that should they fail to timely remit monies due under the Franchise Agreements, they would pay Plaintiffs' collection costs, reasonable attorney's fees, and interest on the unpaid amounts.

105.    Defendants agreed that should they fail to timely remit monies due under the Broadway Lease, they would pay DB Realty's collection costs, reasonable attorney's fees, and interest on the unpaid amounts.

14

106.    Plaintiffs are incurring costs and expenses, including attorneys' fees, as a result of Defendants' breach of the Franchise Agreements and the Broadway Lease.

## COUNT 1
### Breach of Contract - Broadway Franchise Agreement
### (termination and injunction)

107.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 106 of the complaint as if fully set forth herein.

108.    The failure of Defendant Ganpati Donuts, Inc. to timely cure the monetary and sales reporting defaults set forth in the Broadway Notice to Cure sent pursuant to the Broadway Franchise Agreement constitutes a breach of its obligations under the Broadway Franchise Agreement.

109.    The breach of the Broadway Franchise Agreement constitutes grounds for terminating the Broadway Franchise Agreement.

110.    Dunkin' Donuts and Baskin-Robbins terminated the Broadway Franchise Agreement and demanded that Defendant comply with its post-termination provisions.

111.    Defendant has refused to cease using the Dunkin' Donuts and Baskin-Robbins trademarks, trade names and trade dress and has failed to comply with the post-termination provisions of the Broadway Franchise Agreement.

112.    As a result of Defendant's actions, Dunkin' Donuts, Baskin-Robbins, DD IP Holder LLC and BR IP Holder LLC are suffering and continue to suffer irreparable harm and have incurred and continue to incur monetary damages in an amount yet to be determined.

## COUNT 2
### Breach of Contract - North Plank Road Franchise Agreement
### (termination and injunction)

113.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 112 of the complaint as if fully set forth herein.

114.    The failure of Defendant Shree Ram Donuts, Inc. to timely cure the monetary and sales reporting defaults set forth in the North Plank Road Notice to Cure sent pursuant to the

North Plank Road Franchise Agreement constitutes a breach of its obligations under the North Plank Road Franchise Agreement.

115.    The breach of the North Plank Road Franchise Agreement constitutes grounds for terminating the North Plank Road Franchise Agreement.

116.    Dunkin' Donuts terminated the North Plank Road Franchise Agreement and demanded that Defendant comply with its post-termination provisions.

117.    Defendant has refused to cease using the Dunkin' Donuts trademarks, trade name and trade dress and has failed to comply with the post-termination provisions of the North Plank Road Franchise Agreement.

118.    As a result of Defendant's actions, Dunkin' Donuts and DD IP Holder LLC are suffering and continue to suffer irreparable harm and have incurred and continue to incur monetary damages in an amount yet to be determined.

**COUNT 3**
**Breach of Contract – Vails Gate Franchise Agreement**
**(termination and injunction)**

119.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 118 of the complaint as if fully set forth herein.

120.    The failure of Defendant Laxmi Donuts, Inc. to timely cure the monetary and sales reporting defaults set forth in the Vails Gate Notice to Cure sent pursuant to the Vails Gate Franchise Agreement constitutes a breach of its obligations under the Vails Gate Franchise Agreement.

121.    The breach of the Vails Gate Franchise Agreement constitutes grounds for terminating the Vails Gate Franchise Agreement.

122.    Dunkin' Donuts terminated the Vails Gate Franchise Agreement and demanded that Defendant comply with its post-termination provisions.

123.    Defendant has refused to cease using the Dunkin' Donuts trademarks, trade name and trade dress and has failed to comply with the post-termination provisions of the Vails Gate

16

Franchise Agreement.

124.    As a result of Defendant's actions, Dunkin' Donuts and DD IP Holder LLC are suffering and continue to suffer irreparable harm and have incurred and continue to incur monetary damages in an amount yet to be determined.

## COUNT 4
### Breach of Contract – Highland Falls Franchise Agreement
### (termination and injunction)

125.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 124 of the complaint as if fully set forth herein.

126.    The failure of Defendant Krishna Donuts, Inc. to timely cure the monetary and sales reporting defaults set forth in the Highland Falls Notice to Cure sent pursuant to the Highland Falls Franchise Agreement constitutes a breach of its obligations under the Highland Falls Franchise Agreement.

127.    The breach of the Highland Falls Franchise Agreement constitutes grounds for terminating the Highland Falls Franchise Agreement.

128.    Dunkin' Donuts terminated the Highland Falls Franchise Agreement and demanded that Defendant comply with its post-termination provisions.

129.    Defendant has refused to cease using the Dunkin' Donuts trademarks, trade name and trade dress and has failed to comply with the post-termination provisions of the Highland Falls Franchise Agreement.

130.    As a result of Defendant's actions, Dunkin' Donuts and DD IP Holder LLC are suffering and continue to suffer irreparable harm and have incurred and continue to incur monetary damages in an amount yet to be determined.

## COUNT 5
### Breach of Contract – Cornwall Franchise Agreement
### (termination and injunction)

131.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 130 of the complaint as if fully set forth herein.

17

132.    The failure of Defendant Giatri Donuts Inc. to timely cure the monetary and sales reporting defaults set forth in the Cornwall Notice to Cure sent pursuant to the Cornwall Franchise Agreement constitutes a breach of its obligations under the Cornwall Franchise Agreement.

133.    The breach of the Cornwall Franchise Agreement constitutes grounds for terminating the Cornwall Franchise Agreement.

134.    Dunkin' Donuts terminated the Cornwall Franchise Agreement and demanded that Defendant comply with its post-termination provisions.

135.    Defendant has refused to cease using the Dunkin' Donuts trademarks, trade name and trade dress and has failed to comply with the post-termination provisions of the Cornwall Franchise Agreement.

136.    As a result of Defendant's actions, Dunkin' Donuts and DD IP Holder LLC are suffering and continue to suffer irreparable harm and have incurred and continue to incur monetary damages in an amount yet to be determined.

## COUNT 6
## Breach of Contract - South Robinson Avenue Franchise Agreement
### (termination and injunction)

137.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 136 of the complaint as if fully set forth herein.

138.    The failure of Defendant Shreeji Donuts, Inc. to timely cure the monetary and sales reporting defaults set forth in the South Robinson Avenue Notice to Cure sent pursuant to the South Robinson Avenue Franchise Agreement constitutes a breach of its obligations under the South Robinson Avenue Franchise Agreement.

139.    The breach of the South Robinson Avenue Franchise Agreement constitutes grounds for terminating the South Robinson Avenue Franchise Agreement.

140.    Dunkin' Donuts terminated the South Robinson Avenue Franchise Agreement and demanded that Defendant comply with its post-termination provisions.

18

141.    Defendant has refused to cease using the Dunkin' Donuts trademarks, trade name and trade dress and has failed to comply with the post-termination provisions of the South Robinson Avenue Franchise Agreement.

142.    As a result of Defendant's actions, Dunkin' Donuts and DD IP Holder LLC are suffering and continue to suffer irreparable harm and have incurred and continue to incur monetary damages in an amount yet to be determined.

### COUNT 7
### Breach of Contract - Broadway Franchise Agreement
### (termination and injunction based on Lease)

143.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 142 of the complaint as if fully set forth herein.

144.    Defendant Ganpati Donuts, Inc. is in default under the Broadway Franchise Agreement by reason of the termination of the Broadway Lease.

145.    This default cannot be cured as a matter of law.

146.    The breach of the Broadway Franchise Agreement constitutes grounds for terminating the Broadway Franchise Agreement.

147.    Defendant has refused to cease using the Dunkin' Donuts and Baskin-Robbins trademarks, trade names and trade dress and has failed to comply with the post-termination provisions of the Broadway Franchise Agreement.

148.    As a result of Defendant's actions, Dunkin' Donuts, Baskin-Robbins, DD IP Holder LLC and BR IP Holder LLC are suffering and continue to suffer irreparable harm and have incurred and continue to incur monetary damages in an amount yet to be determined.

### COUNT 8
### (Breach of Contract - Broadway Lease)
### (termination and injunction)

149.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 148 of the complaint as if fully set forth herein.

150.    The failure of Defendant Ganpati Donuts, Inc. to timely cure the monetary

19

defaults set forth in the Broadway Notice to Cure sent pursuant to the Broadway Lease constitutes a breach of its obligations under the Broadway Lease.

151.    The breach of the Broadway Lease constitutes grounds for terminating the Broadway Lease.

152.    DB Realty terminated the Broadway Lease and demanded that Defendant vacate the Broadway Premises and surrender possession thereof to it.

153.    Defendant has refused to vacate the Broadway Premises and to surrender possession thereof to DB Realty.

154.    As a result of Defendant's actions, DB Realty is suffering and continues to suffer irreparable harm and has incurred and is continuing to incur monetary damages in an amount yet to be determined.

**COUNT 9**
**(Breach of Contract - Broadway Lease)**
**(termination and injunction based on Franchise Agreement)**

155.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 154 of the complaint as if fully set forth herein.

156.    The termination of the Broadway Franchise Agreement constitutes grounds for the termination of the Broadway Lease.

157.    DB Realty terminated the Broadway Lease and demanded that Defendant Ganpati Donuts, Inc. vacate the Broadway Premises and surrender possession thereof.

158.    Defendant has refused to vacate the Broadway Premises and to surrender possession thereof to DB Realty.

159.    As a result of Defendant's actions, DB Realty is suffering and continues to suffer irreparable harm and has incurred and is continuing to incur monetary damages in an amount yet to be determined.

## COUNT 10
### Breach of Contract - Broadway Franchise Agreement
### (receivables)

160.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 159 of the complaint as if fully set forth herein.

161.    Defendant Ganpati Donuts, Inc. has failed to pay Dunkin' Donuts and Baskin-Robbins franchise fees, advertising fees, late charges, attorney's fees and costs due under the Broadway Franchise Agreement, although due demand has been made for the same.

162.    As a result of Defendant's actions, Dunkin' Donuts and Baskin-Robbins are entitled to a judgment in an amount yet to be determined for all monies now due and which hereafter become due under the Broadway Franchise Agreement, plus interest, attorney's fees and costs.

## COUNT 11
### Breach of Contract - North Plank Road Franchise Agreement
### (receivables)

163.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 162 of the complaint as if fully set forth herein.

164.    Defendant Shree Ram Donuts, Inc. has failed to pay Dunkin' Donuts franchise fees, advertising fees, late charges, attorney's fees and costs due under the North Plank Road Franchise Agreement, although due demand has been made for the same.

165.    As a result of Defendant's actions, Dunkin' Donuts is entitled to a judgment in an amount yet to be determined for all monies now due and which hereafter become due under the North Plank Road Franchise Agreement, plus interest, attorney's fees and costs.

## COUNT 12
### Breach of Contract - Vails Gate Franchise Agreement
### (receivables)

166.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 165 of the complaint as if fully set forth herein.

167.    Defendant Laxmi Donuts, Inc. has failed to pay Dunkin' Donuts franchise fees,

advertising fees, late charges, attorney's fees and costs due under the Vails Gate Franchise Agreement, although due demand has been made for the same.

168.    As a result of Defendant's actions, Dunkin' Donuts is entitled to a judgment in an amount yet to be determined for all monies now due and which hereafter become due under the Vails Gate Franchise Agreement, plus interest, attorney's fees and costs.

## COUNT 13
### Breach of Contract - Highland Falls Franchise Agreement
### (receivables)

169.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 168 of the complaint as if fully set forth herein.

170.    Defendant Krishna Donuts, Inc. has failed to pay Dunkin' Donuts franchise fees, advertising fees, late charges, attorney's fees and costs due under the Highland Falls Franchise Agreement, although due demand has been made for the same.

171.    As a result of Defendant's actions, Dunkin' Donuts is entitled to a judgment in an amount yet to be determined for all monies now due and which hereafter become due under the Highland Falls Franchise Agreement, plus interest, attorney's fees and costs.

## COUNT 14
### Breach of Contract - Cornwall Franchise Agreement
### (receivables)

172.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 171 of the complaint as if fully set forth herein.

173.    Defendant Giatri Donuts Inc. has failed to pay Dunkin' Donuts franchise fees, advertising fees, late charges, attorney's fees and costs due under the Cornwall Franchise Agreement, although due demand has been made for the same.

174.    As a result of Defendant's actions, Dunkin' Donuts is entitled to a judgment in an amount yet to be determined for all monies now due and which hereafter become due under the Cornwall Franchise Agreement, plus interest, attorney's fees and costs.

22

**COUNT 15**
**Breach of Contract - South Robinson Avenue Franchise Agreement**
**(receivables)**

175.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 174 of the complaint as if fully set forth herein.

176.    Defendant Shreeji Donuts, Inc. has failed to pay Dunkin' Donuts franchise fees, advertising fees, late charges, attorney's fees and costs due under the South Robinson Avenue Franchise Agreement, although due demand has been made for the same.

177.    As a result of Defendant's actions, Dunkin' Donuts is entitled to a judgment in an amount yet to be determined for all monies now due and which hereafter become due under the South Robinson Avenue Franchise Agreement, plus interest, attorney's fees and costs.

**COUNT 16**
**(Breach of Contract - Broadway Lease)**
**(receivables)**

178.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 177 of the complaint as if fully set forth herein.

179.    Defendant Ganpati Donuts, Inc. has failed to pay rent, percentage rent, taxes, late charges, attorney's fees and costs due under the Broadway Lease, although due demand has been made for the same.

180.    As a result of Defendant's actions, DB Realty is entitled to a judgment in an amount yet to be determined for all monies now due and which hereafter become due under the Broadway Lease.

**COUNT 17**
**(Breach of Contract - Guarantees)**

181.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 180 of the complaint as if fully set forth herein.

182.    Defendants Amish Patel and Ami Patel have failed to pay the monies due under the Guarantees.

183.    As a result, Defendants owe Plaintiffs a sum to be determined at trial, plus

23

interest, attorney's fees and costs.

## COUNT 18
### (Breach of Contract - Cross Guarantees)

184.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 183 of the complaint as if fully set forth herein.

185.    Defendants Ganpati Donuts, Inc., Shree Ram Donuts, Inc., Laxmi Donuts, Inc., Krishna Donuts, Inc., Giatri Donuts Inc. and Shreeji Donuts, Inc. have failed to pay the monies due under the Cross Guarantees.

186.    As a result, Defendants owe Dunkin' Donuts and Baskin-Robbins a sum to be determined at trial, plus interest, attorney's fees and costs.

## COUNT 19
### Trademark Infringement - Dunkin' Donuts

187.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 186 of the complaint as if fully set forth herein.

188.    The use in commerce by Defendants of the Dunkin' Donuts trade name and trademarks without the consent of Dunkin' Donuts is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Dunkin' Donuts.

189.    Such continued use of the Dunkin' Donuts trade name and trademarks infringes upon the exclusive rights of Dunkin' Donuts and DD IP Holder LLC in the Dunkin' Donuts trademarks under § 32 of the Lanham Act (15 U.S.C. § 1114) and applicable state law.

190.    Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

191.    As a result of Defendants' infringement of the Dunkin' Donuts trade name and trademarks, Dunkin' Donuts and DD IP Holder have suffered and are continuing to suffer substantial and irreparable harm to the goodwill associated with the Dunkin' Donuts trade name and trademarks and have incurred and are continuing to incur monetary damages in an amount

24

yet to be determined.

## COUNT 20
### (Trademark Infringement - Baskin-Robbins)

192.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 191 of the complaint as if fully set forth herein.

193.    The use in commerce by Defendants of the Baskin-Robbins trade name and trademarks without the consent of Baskin-Robbins is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Baskin-Robbins.

194.    Such continued use of the Baskin-Robbins trade name and trademarks infringes upon the exclusive rights of Baskin-Robbins and BR IP Holder LLC in the Baskin-Robbins trademarks under § 32 of the Lanham Act (15 U.S.C. § 1114) and applicable state law.

195.    Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

196.    As a result of Defendants' infringement of the Baskin-Robbins trade name and trademarks, Baskin-Robbins and BR IP Holder LLC have suffered and are continuing to suffer substantial and irreparable harm to the goodwill associated with the Baskin-Robbins trade name and trademarks and have incurred and are continuing to incur monetary damages in an amount yet to be determined.

## COUNT 21
### Unfair Competition - Dunkin' Donuts

197.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 196 of the complaint as if fully set forth herein.

198.    The use in commerce by Defendants of the Dunkin' Donuts trade name and trademarks without Dunkin' Donuts' consent is likely to cause confusion, or to cause mistake, or to deceive the public as to the origin, sponsorship, or approval of its goods, services or commercial activities.

25

199.    Such continued unauthorized use of the Dunkin' Donuts trade name and trademarks violates § 43 of the Lanham Act (15 U.S.C. § 1125(a)) and applicable state law.

200.    Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

201.    As a result of Defendants' unfair competition, Dunkin' Donuts and DD IP Holder LLC have suffered and are continuing to suffer substantial and irreparable harm to the goodwill associated with the Dunkin' Donuts trade name and trademarks and have incurred and are continuing to incur monetary damages in an amount yet to be determined.

## COUNT 22
### Unfair Competition - Baskin-Robbins

202.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 201 of the complaint as if fully set forth herein.

203.    The use in commerce by Defendants of the Baskin-Robbins trade name and trademarks without Baskin-Robbins' consent is likely to cause confusion, or to cause mistake, or to deceive the public as to the origin, sponsorship, or approval of its goods, services or commercial activities.

204.    Such continued unauthorized use of the Baskin-Robbins trade name and trademarks violates § 43 of the Lanham Act (15 U.S.C. § 1125(a)) and applicable state law.

205.    Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

206.    As a result of Defendants' unfair competition, Baskin-Robbins and BR IP Holder have suffered and are continuing to suffer substantial and irreparable harm to the goodwill associated with the Baskin-Robbins trade name and trademarks and have incurred and are continuing to incur monetary damages in an amount yet to be determined.

## COUNT 23
### Trade Dress Infringement - Dunkin' Donuts

207.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through

206 of the complaint as if fully set forth herein.

208.    Defendants' shops are identified by signs, exterior appearance, and other items on which the words "Dunkin' Donuts" appear in the same "frankfurter" lettering style and in the same distinctive pink and orange color scheme as Dunkin' Donuts uses for the doughnut shops operated by Dunkin' Donuts licensees.

209.    Defendants' use of the trade dress that is identical or confusingly similar to Dunkin' Donuts' trade dress constitutes a false designation of the origin of their shops which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of Defendants' shops with the Dunkin' Donuts shops operated by Dunkin' Donuts licensees.

210.    Defendants' adoption of the Dunkin' Donuts trade dress violates § 43 of the Lanham Act (15 U.S.C. § 1125) and applicable state law.

211.    Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

212.    As a result of Defendants' infringement of Dunkin' Donuts' trade dress, Dunkin' Donuts and DD IP Holder LLC have suffered and are continuing to suffer irreparable injury and have incurred and are continuing to incur monetary damages in an amount yet to be determined.

**COUNT 24**
**Trade Dress Infringement - Baskin-Robbins**

213.    Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 212 of the complaint as if fully set forth herein.

214.    Defendants' Broadway store is identified by signs, exterior appearance, and other items on which the words "Baskin-Robbins" and "Baskin-Robbins 31" appear in the same lettering style and in the same distinctive pink color scheme as Baskin-Robbins uses for the ice cream stores operated by Baskin-Robbins licensees.

215.    Defendants' use of the trade dress that is identical or confusingly similar to Baskin-Robbins' trade dress constitutes a false designation of the origin of their store which is

likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of Defendants' store with the Baskin-Robbins stores operated by Baskin-Robbins licensees.

216.    Defendants' adoption of the Baskin-Robbins trade dress violates § 43 of the Lanham Act (15 U.S.C. § 1125) and applicable state law.

217.    Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

218.    As a result of Defendants' infringement of Baskin-Robbins' trade dress, Baskin-Robbins and BR IP Holder LLC have suffered and are continuing to suffer irreparable injury and have incurred and are continuing to incur monetary damages in an amount that has yet to be determined.

WHEREFORE, Plaintiffs pray that this Court:

A.    Enter a judgment declaring that the Franchise Agreements are terminated *nunc pro tunc*; and

B.    Enter a judgment declaring that the Broadway Lease is terminated *nunc pro tunc*; and

C.    Enter an injunctive order enjoining Defendants, their employees, agents, servants, or persons acting on their behalf from using the trademarks, trade name and trade dress of Dunkin' Donuts and from holding themselves out to the public as, and from operating as, Dunkin' Donuts franchisees, and requiring them to remove all signs, logos, names and other indicia that their shops are or were Dunkin' Donuts shops; and

D.    Enter an injunctive order enjoining Defendants, their employees, agents, servants, or persons acting on their behalf from using the trademarks, trade name and trade dress of Baskin-Robbins and from holding themselves out to the public as, and from operating as, Baskin-Robbins franchisees, and requiring them to remove all signs, logos, names and other indicia that their store is or was a Baskin-Robbins store; and

E.     Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreements and directing Defendants to comply with their post-termination obligations thereunder *nunc pro tunc*; and

F.     Enter an injunctive order ratifying and enforcing the termination of the Broadway Lease and directing Defendants to comply with their post-termination obligations thereunder *nunc pro tunc*; and

G.     Enter a judgment of possession and issue an order directing Defendants to vacate the Broadway Premises and to surrender possession thereof to DB Realty; and

H.     Enter a judgment in favor of Plaintiffs and against Defendants for the damages incurred by Plaintiffs as a result of Defendants' breaches of the Franchise Agreements and the Broadway Lease; and

I.     Award Plaintiffs prejudgment interest against Defendants in accordance with § 35 of the Lanham Act (15 U.S.C. § 1117); and

J.     Award Plaintiffs such exemplary and punitive damages against Defendants as are deemed appropriate because of the wilful, intentional and malicious nature of Defendants' conduct; and

K.     Award Plaintiffs judgment against Defendants for their costs and attorney's fees incurred in connection with this action pursuant to the Franchise Agreements, the Broadway Lease, and § 35 of the Lanham Act (15 U.S.C. § 1117); and

L.     Award Plaintiffs such other and further relief as this Court may deem just and proper.

29

Dated: New York, New York
     May 2, 2008

                      Respectfully submitted,

                      **RONALD D. DEGEN**
                      SCOTT G. GOLDFINGER
                      KRISTIN M. LASHER
                      O'ROURKE & DEGEN, PLLC
                      Attorneys for Plaintiffs
                      225 Broadway, Suite 715
                      New York, New York 10007
                      Tel:    (212) 227-4530
                      Fax:    (212) 212-385-9813
                      E-mail:rdegen@odlegal.com